Marta B. RODRIGUEZ et al., Plaintiffs

v.

TOWERS APARTMENTS, INC., et al., Defendants.

Civil No. 1058–72.

United States District Court, D. Puerto Rico.

May 3, 1976.

Julio Martinez Julia, Frank Brunet Calaf, San Juan, P. R., for plaintiffs.

William Estrella and Igor Dominquez, San Juan, P. R., for defendants.

## OPINION AND ORDER

TORRUELLA, District Judge.

This is a suit by the Tenants of certain privately owned apartment buildings [1] seeking declaratory and other equitable relief against the said owners and certain federal housing agency officials in Puerto Rico.[2] Plaintiffs [3] contend that the Federal Defendants approved rent increases sought by the Private Defendants without affording the Plaintiff Tenants an opportunity to participate in this determination.

Plaintiff Tenants assert jurisdiction pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 1343(3). This allegation we shall presently discuss in further detail.

The parties have entered into a stipulation that pursuant to existing "HUD laws and regulations", Private Defendants sought, and Federal Defendants granted, rent increases without Plaintiff Tenants' participation in the said rent increase procedure.

The apartments here in question are complexes constructed under the § 207 program administered by the Department of Housing and Urban Development (HUD). 12 U.S.C. § 1713. Under § 207 of the National Housing Act the Secretary of Hud is authorized to insure mortgages for the projects. The program was intended to encourage and facilitate the production of privately owned rental accommodations designed to provide units suitable for family occupancy at reasonable rents. 12 U.S.C. § 1713(b). Tenants residing in § 207 housing do not receive the benefit or assistance of any federal subsidies that reduce rents.

The Secretary is authorized to regulate the mortgagor with respect to rents, charges, capital structure, rate of return, and method of operation by promulgating rules and regulations and entering into contracts. 12 U.S.C. § 1713(b)(2). These regulations appear at 24 CFR Part 207. 24 CFR § 207.19(e) specifically provides that the mortgagor may not charge rents in excess of those approved by HUD. In approving ceiling rents the Secretary considers "the rental income necessary to maintain the property" and to provide a "reasonable return on investment consistent with providing reasonable rentals." 24 CFR § 207.-19(e). When a mortgagor requests HUD's approval of a proposed rent increase he must submit a written request properly supported by substantiating evidence. Neither the owner nor the tenants are afforded a hearing on the proposed increase.

Plaintiffs base the Court's jurisdiction on 42 U.S.C. § 1983 and 28 U.S.C. § 1343(3) which is clearly inappropriate. The Supreme Court, in the *District of Columbia v. Carter,* 409 U.S. 418, 93 S.Ct. 602, 34 L.Ed.2d 613 (1973) states:

"[the Fourteenth Amendment is] addressed only to the State or those acting under [the] color of its authority . . [A]ctions of the Federal Government and its officers are beyond the purview of the Amendment . . . [42 U.S.C. § 1983, which was enacted pursuant to the Amendment] deals only with those deprivations of which are accomplished under the color of the law of 'any State or Territory' . . . actions of the Federal Government and its officers are at least facially exempt from its proscrip-

---

1. Tower Apartments, Inc., Roosevelt Towers Apartments, Inc. and Borinquen Towers Apartments, Inc., hereinafter collectively referred to as "Private Defendants."

2. Hereinafter collectively referred to as "Federal Defendants" or "HUD."

3. Hereinafter collectively referred to as "Plaintiff Tenants."

tions." 409 U.S. at 423–425, 93 S.Ct. at 606.

■ Since the Federal Defendants are all acting pursuant to federal statutes and regulations they are clearly not covered by 42 U.S.C. § 1983 and its companion jurisdictional statute, 28 U.S.C. § 1343(3).

■ Furthermore, the Private Defendants are similarly situated. State action is a prerequisite to action under Section 1983. *Ascherman v. Presbyterian Hospital of Pac. Medical Center, Inc.,* 507 F.2d 1103 (C.A. 9, 1974); *Robison v. Wichita Falls & North Texas Community Action Corp.,* 507 F.2d 245 (C.A. 5, 1975). Furthermore, a private person cannot be held liable under the provisions of this section unless his action was done under color of state law or state authority. *Guedry v. Ford,* 431 F.2d 660 (C.A. 5, 1970); *Moro v. Telemundo Incorporado,* 387 F.Supp. 920 (D.C.P.R., 1974). There is no allegation, much less proof, of state action being involved in this case as regards the Private Defendants. In fact it is uncontested that the action taken by said defendants is pursuant to Federal law or authority. It is clear therefore that the complaint fails to state a cause of action or to claim valid grounds for jurisdiction against Private Defendants. Cf., *McQueen et al. v. Druker et al.,* 438 F.2d 781 (C.A. 1, 1971).

Although not specifically claimed as a jurisdictional ground in the Complaint, it is claimed by Plaintiff Tenants' brief that their right to participate in the rent in-

crease procedure is guaranteed by the due process clause of the Fifth Amendment and/or by the provisions of the National Housing Act, as amended.

On May 30, 1973 this Court denied Plaintiffs' Motion for a Preliminary Injunction. The Court held therein that the First Circuit's decision in *Hahn v. Gottlieb,* 430 F.2d 1243 (C.A. 1, 1970), was controlling and required a holding that Plaintiffs have neither a statutory nor a constitutional right to participate in rent increase procedures. The Court's order is similarly controlling here. *Hahn* held that tenants residing in privately owned, federally insured and subsidized housing have neither a constitutional nor a statutory right to participate in the Secretary's consideration and approval of a mortgagor's application for a rent increase.[4] The contention that tenants are entitled to a hearing prior to HUD's approval of a rent increase finds "no support in the text of the National Housing Act." *Hahn v. Gottlieb,* supra, at page 1246.[5] To the contrary Congress intended to delegate broad discretion to the Secretary to allow him sufficient latitude to devise guidelines and procedures necessary to carry out the goals of the Act, including procedures for setting rents. 12 U.S.C. § 1715*l*(d)(3).[6]

"These [HUD] regulations illustrate that the success of [the Section] 221(d)(3) project requires a flexible exercise of administrative discretion. The ultimate goal of the program is housing for low

---

4. The tenants residing in the housing project considered by the *Hahn* Court received the benefits of federal subsidies that reduced their rents. Plaintiff Tenants reside in § 207 unsubsidized housing and do not receive the benefits of such subsidies.

5. See also *Langevin v. Chenango Court, Inc.,* 447 F.2d 296 (C.A. 2, 1971); *People's Rights Organization v. Bethlehem Associates,* 356 F.Supp. 407 (E.D.Pa., 1973); aff'd 487 F.2d 1395 (C.A. 3, 1973); and *Harlib v. Lynn,* 511 F.2d 51 (C.A. 7, 1975). *Tenants Council of Tiber Island-Carrollsburg Square v. Lynn,* 162 U.S.App.D.C. 61, 497 F.2d 648 (1973), cert. den., 419 U.S. 970, 95 S.Ct. 235, 42 L.Ed.2d 186 holds that tenants residing in federally insured, non-subsidized housing are not statutorily entitled to participation. But see *Marshall v. Lynn,*

162 U.S.App.D.C. 56, 497 F.2d 643 (1973) and *Paulsen v. Coachlight Apartments Co.,* 507 F.2d 401 (C.A. 6, 1974), holding tenants residing in federally subsidized housing have a statutory right to limited written participation.

6. At all relevant times herein the plaintiffs resided in Section 207 non-subsidized federally insured housing. The National Housing Act provides that in administering the Section 207 non-subsidized federal mortgage insurance program the mortgagor shall be "regulated or restricted by the Secretary as to rents, . . . rate of return, and methods of operation to such extent and in such manner as to provide reasonable rentals to tenants and a reasonable return on the investment." 12 U.S.C. 1713(b)(2).

and middle income families, but this goal is to be achieved by expanding the range of housing needs which can be met by private enterprise. S.Rep.No.281, 87th Cong., 1st Sess. 3 (1961). To provide low-income housing while maintaining a sound investment requires considerable adaptability. We think Congress recognized this need for adaptability when it authorized the Secretary to regulate mortgagors by individual agreement as well as by general rule. Of course, the need for administrative flexibility does not of itself preclude an agency hearing or judicial review, but we must take care lest we kill the goose in our solicitude for the eggs." [Footnote omitted] *Hahn v. Gottlieb,* supra, at page 1246.

Thus the First Circuit has unequivocally held that the National Housing Act does not require tenant participation in rent increases and has deferred to the Secretary's discretionary authority in establishing procedures in the area.[7]

Similarly, the First Circuit and four of the five other circuits considering the issue have rejected the existence of any constitutional right to a prior hearing before approval of a rent increase in federally subsidized housing. See *Hahn v. Gottlieb,* supra; *Langevin v. Chenango Court, Inc.,* supra; *People's Rights Organization v. Bethlehem,* supra; *Harlib v. Lynn,* supra; *Paulsen v. Coachlight Apartments Co.,* supra; and *McKinney v. Washington,* 143 U.S.App.D.C.

4, 442 F.2d 726 (1970).[8] Moreover, the Plaintiff Tenants reside in § 207 non-subsidized housing and unlike tenants in subsidized housing, receive no federal benefits that reduce the rents they pay. The Court of Appeals for the District of Columbia has held that tenants residing in federally insured non-subsidized housing do not have a constitutionally protected right to participate. *Tenants Council of Tiber Island-Carrollsburg Square v. Lynn,* supra. No court has held otherwise.

The *Hahn* court found that for Plaintiffs to claim a constitutional right to a hearing they must show the existence of a property right and demonstrate that on balance the infringement upon that property right outweighs the interest the government is seeking to preserve. It concluded that the government's interests in summary procedure far exceeded the tenant's interest in greater procedural safeguards. *Hahn v. Gottlieb,* supra, at page 1243.

The Secretary has been delegated the authority to set rents at levels found to be sufficient to maintain the economic soundness of a project to "provide a reasonable return on investment consistent with providing reasonable rentals to the tenants." 24 CFR § 221.531(c).[9] The First Circuit found that the Secretary's exercise of this discretion was essentially "an informal ratemaking process . . . where decision depends on broad familiarity with economic conditions." *Hahn v. Gottlieb,* supra, at

---

7. HUD has voluntarily promulgated regulations providing tenants of subsidized housing a limited opportunity of written participation prior to HUD's approval of a rent increase. 24 CFR Part 401. The regulation does not extend such participation to non-subsidized projects (such as § 207 projects involved herein). It had not been published at the time *Hahn* was decided. The Plaintiff Tenants do not contend these regulations are applicable. Assuming arguendo that such a contention was to be made, the decision to afford participation to tenants who receive the benefits of federal subsidies that reduce their rents and not to afford similar participation to tenants who do not receive the benefit of such federal subsidies is not a denial of equal protection of the laws. It is clearly a rational exercise of the Secretary's discretion to treat the two classes of tenants differently in

light of the differences of the federal benefits they receive. *Richardson v. Belcher,* 404 U.S. 78, 92 S.Ct. 254, 30 L.Ed.2d 231; *Dandridge v. Williams,* 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491; *James v. Valtierra,* 402 U.S. 137, 91 S.Ct. 1331, 28 L.Ed.2d 678; and *Lindsey v. Normet,* 405 U.S. 56, 92 S.Ct. 862, 31 L.Ed.2d 36.

8. *Geneva Towers Tenants Organization v. Federal Federated Mortgage Investors,* 504 F.2d 483 (C.A. 9, 1974), held tenants residing in federally subsidized projects had a right of limited written participation in rent increase procedures.

9. 12 U.S.C. § 1713(b)(2) delegates similar authority to the Secretary to supervise § 207 projects. See also 24 CFR § 207.19(e).

page 1248. The Court determined that tenants residing in federally insured and subsidized projects lacked sufficient expertise to meaningfully contribute to this process and that such deliberations should therefore be entrusted to the experienced staff of the F.H.A. *Hahn v. Gottlieb,* supra, at page 1248.

Subsequent to the *Hahn* decision the Supreme Court held, in *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), that a person was not entitled to the protections of the Fifth Amendment merely because he was deprived of a unilateral expectation of a government benefit. Instead a person must be deprived of a "legitimate claim of entitlement" to a benefit.

. . . "It is a purpose of the ancient institution of property to protect [only] those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined. It is a purpose of the constitutional right to a hearing to provide an opportunity for a person to vindicate those claims." *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709 (1972).

Therefore, a person can assert that he had a legitimate claim of entitlement to a benefit only when Congress intended to extend some kind of enforceable interest to him or when Congress intended to create a governmental obligation in his favor. Thus, in *Roth,* supra, where the intended benefit was limited to the right to employment for one year, there was no constitutional right to a hearing for the renewal of a contract.

 The benefit contemplated by Congress in enacting the National Housing Act was to provide a pool of privately financed and managed housing for low and middle income people. Neither the Congress nor HUD intended that the people residing in such housing have a "property interest in a certain rental charge." *People's Rights Organization v. Bethlehem Associates,* supra, at page 413. See 12 U.S.C. § 1713(b)(2).

"The private interest affected . . . is the interest of low and middle income families in housing they can afford. The government has not, however, undertaken to provide this assistance directly under the § 221(d)(3) program. Instead the government provides a limited subsidy to private landlords, who then enter an ordinary lease arrangement with eligible tenants. *Plaintiffs are not legally 'entitled' to low rents in the same sense that the welfare recipient in Goldberg v. Kelly, supra [90 S.Ct. 1011, 25 L.Ed.2d 287] was entitled to basic sustenance under a system of categorical assistance* . . . Moreover, the tenant's interest is not directly jeopardized each time the F.H.A. approves a rent increase. The increase may be small, and rent supplement programs are available to those in greatest need." . . . *Hahn v. Gottlieb,* supra, at page 1247. (Emphasis added).

Tenants residing in federally insured and subsidized housing are therefore not deprived of a property right when their rents are increased. Clearly the rationale of *Hahn* and its progeny is especially controlling here when only nonsubsidized housing is involved and the Plaintiff Tenants do not receive any federal assistance to reduce rental levels.

Considering the above Plaintiff Tenants' action is dismissed, with costs to Defendants.

The Clerk of the Court shall enter Judgment accordingly.

IT IS SO ORDERED.